STOKER, Judge.
Dr. William F. Foster owned a 31-foot Bertram Sportfisher. Dr. Foster was notified on October 5, 1980 that the boat had sunk while docked at the Batistella Marina in Empire, Louisiana. Reliance Insurance Company had issued a $50,000 all-risk yacht policy to Dr. Foster, but refused to pay for the loss, claiming that the vessel sank due to electrolysis, a cause which is excluded from coverage. Dr. Foster sued Reliance, and was awarded $50,000, but penalties and attorney’s fees were denied. Reliance appeals the finding of coverage. Dr. Foster appeals the denial of penalties and attorney’s fees.
The trial judge gave the following account of the evidence:
“Dr. Foster testified that he had used the boat the week before the sinking. While proceeding up the Mississippi River at night he hit something in the river. This caused a bad vibration when the starboard engine was in gear. He arrived at his dock at 11:00 — 12:00 P.M. on Saturday, October 4, 1980. After tying up the boat, he inspected the boat including the stuffing boxes, bilge pumps, etc. He found nothing irregular.
“Ralph Johnson testified that he maintained the boat for Dr. Foster. After the sinking he raised the boat by pumping it out. After the boat was afloat, he found it was taking water from a through hull fitting near the stern. The through hull fitting assembly consisted of a bronze through hull fitting attached to a bronze sea cock to which was attached an iron hose nipple. A hose was connected to *194 the nipple by use of a hose clamp. Mr. Johnson found that there was a ¾6" hole in the steel nipple and this was where the sea water was intruding. He then closed the sea cock stopping the flow of water. He found no other leaks.
“Some three-four days after the sinking, the boat sank a second time. It was raised again and subsequently was repaired by Chip Hilbert. Mr. Hilbert testified by way of deposition. He said he found the starboard rudder to be bent about 2" to the outboard side. Also while washing the boat out while it was shored up on land, he found water running out of the starboard rudder stuffing box and the starboard shaft stuffing box. An inspection revealed that the stuffing box packing had wallered out caused by bent shafts.”
The judge then concluded:
“... There is ample evidence to support a finding that there was electrolysis of the iron nipple. This may have contributed to or hastened the first sinking but obviously was not the sole cause of that sinking because after the boat was raised and the sea cock closed, the vessel sank again.
“The evidence is also clear that the starboard shaft and rudder were damaged when Dr. Foster struck the object in the river.
“Considering all the evidence the Court finds the sinking was not due to electrolysis but to the accident. Accordingly, plaintiff is awarded judgment in the amount of the policy limits.”
The main issue in this case is one of fact: What caused the boat to sink? We cannot disturb the trial judge’s conclusion that the primary cause was the damage sustained in the accident absent manifest error. While strong evidence exists that an iron pipe nipple corroded because of its union with an incompatible bronze gate valve, we cannot say that the trial judge was clearly wrong in concluding that water intruding around the stuffing box caused the sinking. The hole in the pipe nipple was only 5/ie" in diameter, and Johnson had limited the flow of water through it by shutting off the gate valve. After this, the boat sank a second time. There is sufficient basis to support the conclusion that the leaking stuffing box was the “predominant and determining” or “real efficient” cause of the sinking. See Ins. Co., etc. v. John J. Bordlee Contractors, 532 F.Supp. 774 (E.D.La.1982).
Reliance argues that Foster is not entitled to recover due to the unseaworthiness of the boat, another cause excluded in the policy. An insurer bears the burden of proving that a vessel is unseaworthy, and this burden requires a showing that the shipowner had knowledge of the condition. Lemar Towing, Inc. v. Fireman’s Fund Ins. Co., 352 F.Supp. 652 (E.D.La.1972). • Here, Ralph Johnson had inspected the boat after Foster reported the accident and found the rudder bent. The stuffing boxes appeared intact. It was only after the sinking that it was noticed that the packing had worked its way out of one of the stuffing boxes. The insurer did not prove that Johnson’s inspection was in any way deficient. Foster and Johnson did not know that the stuffing box was not properly packed. Therefore, Reliance did not meet its burden of showing that the vessel was unseaworthy.
Foster appeals the denial of penalties and attorney’s fees. LSA-R.S. 22:658(B)(1) provides that an insured is entitled to a penalty and attorney’s fees against an insurer who is arbitrary, capricious, or without probable cause in failing to pay a claim. Reliance’s refusal to pay was based on a good faith belief that one of two provisions in the policy would exclude coverage. Under the circumstances, we agree with the trial judge that Reliance’s failure to pay was not arbitrary or capricious; therefore, penalties and attorney’s fees are not due to the plaintiff.
Costs of this appeal are assessed to the defendant-appellant.
AFFIRMED.